# United States District Court
## for the Northern District of Oklahoma

Case No. 22-cv-337-JDR-SH

GRETA J. HURT; JUILE D. LYNN,

*Plaintiffs*,

*versus*

CITY OF TULSA, OKLAHOMA,

*Defendant.*

### OPINION AND ORDER

Plaintiffs Greta Hurt and Julie Lynn began employment with the City of Tulsa's Fire Department in 1998. In 2021, the Department announced two openings for Assistant Fire Chief. Ms. Hurt, Ms. Lynn, and two of their male co-workers applied for the open positions. The male applicants, Mr. Hickerson and Mr. Wilson, were selected. Ms. Hurt and Ms. Lynn sued the Department alleging that the Department discriminated against them in the promotion process based on their sex, retaliated against them when they challenged the Department's promotional decisions, and subjected them to a hostile work environment. Dkt. 2. The Department has moved for summary judgment on all of Plaintiffs' claims. Dkt. 45. For the reasons discussed below, the motion is granted in part and denied in part.

I

Plaintiff Greta Hurt began her employment with the Fire Department for the City of Tulsa in March 1998. Over the years, she has served the Department in multiple capacities, including as a Driver, Captain, Fire Investigator, District Chief, Director of the Tulsa Fire Safety Training Center, and

Administrative Chief. Dkt. 45 at 7 (statement of fact no. 1).[1] Plaintiff Julie Lynn began her career with the Department at the same time as Ms. Hurt and, in the twenty years that followed, served as a Driver, Captain, District Chief, and Chief of Training. *Id.* at 8 (statement of fact no. 5); Dkt. 48 at 3 (response to statement of fact no. 5).[2] In 2021, two vacancies arose within the Department: One for the position of Assistant Chief of the A Platoon, and one for Assistant Chief of the C Platoon. Dkt. 45-4 at 12. Ms. Hurt and Ms. Lynn applied for both vacancies, as did their male co-workers Bryan Hickerson[3] and Leon Wilson.[4] All four candidates were qualified for the open positions. Dkt. 45-1 at 40.

The Department's Administrative Operating Procedures[5] set forth a specific procedure for filling the two vacant Assistant Chief positions. Dkt. 45-7. According to the AOP, the Department would administer an oral board examination to qualify applicants for eligibility. *See id.* at 2 (describing eligibility requirements and procedure for filling a vacant FD-06 position). The four applicants with the highest scores would be placed on an eligibility list

---

[1] All citations utilize CMECF pagination. The facts recited within this section are construed in light most favorable to Plaintiffs, and the Court has drawn all reasonable inferences in their favor. *See Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).

[2] After this lawsuit was filed, Ms. Lynn was promoted to Deputy Chief.

[3] Mr. Hickerson had been employed by the Department for over 30 years and had served as a Driver, Captain, and District Chief by the time he applied for the two vacant positions. Dkt. 45 at 8 (statement of fact no. 6).

[4] Mr. Wilson, like Plaintiffs, began his employment with the Department in 1998. He served as Extra Driver, Captain, and District Chief. He had been assigned to the position of Administrative Chief for approximately six months prior to being promoted to the position of Assistant Chief. Dkt. 45 at 8 (statement of fact no. 7); Dkt. 48 at 3 (response to statement of fact no. 7).

[5] The Administrative Operating Procedures were negotiated every year by the City of Tulsa and the local chapter of the International Association of Fire Fighters.

and ranked from highest to lowest score. *Id.*[6] The Fire Chief would then select the new Assistant Chiefs from the ranked list. *Id.*

The Department did not always follow the AOP: The union and the Fire Chief could deviate from the prescribed procedures by written agreement. *See* Dkt. 45-1 at 41; Dkt. 45-3 at 7; 45-6 at 24.[7] Fire Chief Michael Baker spoke to the mayor's office, the union president, and the four candidates about deviating from the AOP when filling the two vacant positions.[8] Matt Lay, the union president, informed Chief Baker that the proposed plan would not be fair to Ms. Hurt or Ms. Lynn "based on the fact that they were likely to benefit from an outside assessment given their superior qualifications," including their "executive fire officer training and other educational and professional qualifications . . . [and their] administrative experience" in the Department. Dkt. 48-7 at 2. Mr. Lay reiterated his concerns at a July 22, 2021 meeting of the Department's personnel committee, but the Department

---

[6] Ordinarily, only the top three candidates would be listed. In this case, an additional candidate was added due to the second vacancy. Dkt. 45-7 at 2.

[7] Although the Department alleges that it was "common" to deviate from the CBAs by agreement, it has not presented evidence showing how frequently this procedure was utilized in the employment context. It was used on at least one other occasion: In 2020 four candidates (two male candidates, Ms. Hurt, and Ms. Lynn) expressed intent to apply for a vacant Deputy Chief position. During the sign-up period, Ms. Lynn withdrew her name when she was advised by the current union president that Brent Goins was the preferred candidate. After Ms. Lynn withdrew from consideration, a memorandum of understanding was entered to modify the selection process. No outside assessment was conducted, and Brent Goins was selected as Deputy Chief. *See* Dkt. 45-1 at 12-15; 45-2 at 10-12; Dkt. 45-5; Dkt. 48-7.

[8] The candidates agreed to deviate from the AOP, but it is not clear that they agreed to the process ultimately selected by the Department. *See* Dkt. 45-1 at 41-42 ("I wasn't agreeing to no assessments. I was agreeing to not IO solutions."); Dkt. 45-2 at 20-21 ("I never said, yes, I want an assessment, no, I do not want an assessment. I just said I would do what's best for the department. And it wasn't five minutes later, he . . . text[ed] me and wanted some type of documentation on that."); Dkt. 45-3 at 7; Dkt. 45-4 at 14.

elected to move forward with a modified procedure notwithstanding Mr. Lay's concerns. Dkt. 48-9.

The following day, Mr. Lay met with Chief Baker and Deputy Chief Goins, both of whom indicated that "they wanted [Mr. Lay] to sign [an] MOU [deviating from the AOP] because they needed the ability to pick who they wanted to pick." Dkt. 48-7 at 2. Chief Baker had previously expressed to Mr. Lay that he might not feel free to choose his preferred candidate if presented with a ranked list.[9] Mr. Lay declined to sign the MOU because he "knew what they were trying to do, and it was not fair." *Id.* Ultimately, the union's executive board met and required Mr. Lay to sign the MOU, which he did on August 18, 2021. *Id.*

Chief Baker assembled an interview panel composed of himself, Deputy Chief Goins, and a retired fire chief from Georgia, Donnell Campbell, who taught fire courses at a local community college and was familiar with the Department. Dkt. 45 at 12 (statement of fact no 21); Dkt. 48 at 8 (response to statement of fact no. 21). The panel interviewed the four candidates and met to discuss their impressions. Each member of the panel recommended Mr. Hickerson and Mr. Wilson for promotion and provided objective reasons to support his recommendation. Chief Baker ultimately selected Mr. Hickerson and Mr. Wilson for the vacant Assistant Chief positions. *See* Dkt. 45 at 13-14. He maintains that his decision had nothing to do with the fact that Ms. Hurt and Ms. Lynn are females. *Id.* at 14 (statement of fact no. 36).

Soon afterward, Ms. Hurt and Ms. Lynn submitted complaints alleging that they were discriminated against during the selection process. Dkt. 45-1 at 46; Dkt. 45-2 at 25-26; Dkt. 45-13. The Department investigated the complaints but found no evidence of discrimination. Dkt. 45 at 15 (statement of fact no. 43). After filing the complaints, Ms. Lynn noticed that people were

---

[9] *See* Dkt. 48-7 at 1 ("Chief Baker told me that if assessments were done then he would feel pressure from the Mayor to pick the top ranked person on the list.").

avoiding her rather than going through the chain-of-command, and she received an uncharacteristically poor performance review. Dkt. 45-2 at 28-34. Ms. Hurt was shunned by others in the Department, was left out of meetings, and felt that she was being undermined. Dkt. 45-1 at 52-55. As a result of this alleged mistreatment, Ms. Hurt resigned from the Department on August 1, 2022. *Id.* at 57-58. Ms. Lynn remains employed by the Department, where she now holds the position of Deputy Chief. Dkt. 45-2 at 6.

Ms. Hurt and Ms. Lynn filed complaints with the EEOC on February 28, 2022, and March 1, 2022, respectively. They received right-to-sue notices on June 30, 2022. On July 28, 2022, they sued the Department for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* This Court has jurisdiction over Plaintiffs' claims, all of which are challenged by the Department's motion for summary judgment. Dkt. 45.

## II

To resolve the Department's motion, the Court must view the facts in the light most favorable to Plaintiffs and construe all reasonable inferences in their favor. *Cillo*, 739 F.3d at 461. Summary judgment may be entered only if there are no genuine disputes as to any material facts that would permit a rational jury to find in favor of Plaintiffs, even when all reasonable inferences are construed in favor of the Plaintiffs. *Id.* (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000)). The question for the Court, then, is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that [the Department] must prevail as a matter of law." *Wicks v. United States*, 304 F. Supp. 3d 1079, 1089 (N.D. Okla. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

### A

With the foregoing standards in mind, the Court first considers the Department's argument that it is entitled to judgment on Plaintiffs' claim that

No. 22-cv-337

the Department discriminated against them during the 2021 promotion process. Title VII is a remedial measure designed to ensure equality in employment opportunities. *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1045 (10th Cir. 2020) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 276 (1982)). The statute prohibits any discrimination in employment based on an individual's sex, and an employer violates Title VII if an employee's sex plays a role in the employer's promotion decisions. 42 U.S.C. § 2000e-2(a)(1). *See Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003) (discussing Title VII failure-to-promote claim); *Frappied*, 966 F.3d at 1045 (recognizing an employer violates Title VII when its employment decision is based, even in part, on the employee's membership in a protected class).

At the summary judgment stage, the question of whether the Department's promotion decisions violated Title VII is analyzed under the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Jones*, 349 F.3d at 1266. There is no dispute that Ms. Hurt and Ms. Lynn can establish a prima facie case of retaliation (thus satisfying their initial burden of production), nor is there any dispute that the Department has proffered a legitimate, nondiscriminatory reason for its decision (which shifts the burden back to Plaintiffs). *See* Dkt. 45 at 22-23; Dkt. 48 at 19-24. Accordingly, the only question for this Court to resolve is whether Plaintiffs have satisfied the third step of the burden-shifting analysis by presenting evidence that would permit a jury to find that the Department's stated reasons for promoting two male employees over Ms. Hurt and Ms. Lynn are pretextual.

The Court has little difficulty answering this third question in the affirmative. The Department claims that Mr. Hickerson and Mr. Wilson simply outperformed Ms. Hurt and Ms. Lynn in their respective interviews before a three-person panel. *See* Dkt. 45 at 24-26. And perhaps they did. But Plaintiffs have presented evidence that calls the three-person interview process into question: In 2020, Chief Baker allegedly stated that he would feel pressure to

6

pick the top-ranked candidate if he followed the promotion process in the AOP. Dkt. 48-7 at 1. In July 2021, Chief Baker and Deputy Chief Goins asked Mr. Lay to sign an MOU deviating from the established procedures "because they needed the ability to pick who they wanted to pick," *i.e.*, not the top-ranked candidates. *Id.* at 2. Mr. Lay refused to sign the MOU and told Chief Baker that the two female candidates were likely to benefit from an outside assessment due to their superior qualifications, and the alternative procedure would be unfair to them. *Id.* There is no evidence that Chief Baker investigated Mr. Lay's concerns or tried to address them. Instead, the union's executive board (allegedly at the request of Deputy Chief Goins) required Mr. Lay to sign the MOU notwithstanding his concerns about the fairness of the process. *Id.* Then, and only then, did the Department assemble an interview panel composed of Chief Baker, Deputy Chief Goins, and another representative, all of whom agreed that the male candidates performed better than their female counterparts.

Could a jury find that the Department's decision to forgo the established procedure was the product of a desire to save the city and the candidates the cost and burden of an assessment? The answer to that question is yes. Could a jury also find, based on Mr. Lay's testimony, that Chief Baker and Deputy Chief Goins departed from the AOP process because they wanted to pick their preferred candidates, regardless of how well they performed on an impartial assessment? The answer to that question is also yes.

These facts are sufficient to call into question the District's assertion that it elected to promote Mr. Hickerson and Mr. Wilson because they outperformed Plaintiffs; the evidence could, instead, support the conclusion that at least two of the three panelists simply preferred Mr. Hickerson and Mr. Wilson and would have selected them for the vacant positions regardless of how well they performed in whatever selection process was ultimately used. Accordingly, Plaintiffs have satisfied their burden of pointing to facts that could demonstrate the Department's stated reasons for its decision were

pretextual and untruthful. *See Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995). This evidence of pretext is, in itself, sufficient to defeat the Department's motion to for summary judgment on Plaintiffs' claim of discrimination during the 2021 promotional process. *Id.* at 451 (holding that a showing of pretext is "evidence which allows a jury to infer discriminatory intent"). Accordingly, the Department's motion is denied with respect to that claim.

B

The Court next considers Plaintiffs' claim that the Department retaliated against both Ms. Hurt and Ms. Lynn when they challenged the Department's discriminatory promotion practice in late 2021.[10] Title VII protects employees from "employers who retaliate against them for 'having opposed, complained of, or sought remedies for, unlawful workplace discrimination.'" *Moore v. Tulsa*, 55 F. Supp. 3d 1337, 1346 (N.D. Okla. 2014) (quoting *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013)) (internal citation omitted). To establish a claim for retaliation, Ms. Hurt and Ms. Lynn must provide evidence that, if true, would permit a jury to conclude that: (1) they had engaged in opposition to discrimination in violation of Title VII; (2) the Department subjected them to an adverse employment action; and (3) the adverse employment action was causally connected to the protected activity. *Id.*; *see Jones*, 349 F.3d at 1269.

---

[10] The Department argues that any claims for retaliation resulting from an employment decision made in July 2020 and Ms. Hurt's transfer in March of 2021 are time-barred, as they took place more than 180 days before Plaintiffs filed their EEOC complaints. Dkt. 45 at 19. Plaintiffs do not argue otherwise. Dkt. 48 at 24-25. The Court agrees that Plaintiffs' retaliation claims cannot extend to conduct that took place more than 180 days prior to the filing of their EEOC complaints. *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 n.3 (10th Cir. 1998) (recognizing that a plaintiff must file a complaint with the EEOC "within 180 days or with a state agency within 300 days" in order to preserve their ability to maintain a cause of action under Title VII).

No. 22-cv-337

The first element is satisfied, as Ms. Hurt and Ms. Lynn engaged in protected activity by filing complaints within the Department and with the EEOC opposing the Department's alleged discrimination. *See Tabor v. Hilti*, 703 F.3d 1206, 1219 (10th Cir. 2013) ("The district court and the parties agree that Ms. Tabor engaged in protected opposition . . . when she complained to her supervisor and to HR about Mr. Teel's discriminatory comments during the interview.").[11] But Plaintiffs have failed to present evidence sufficient to establish the second and third elements. The evidence of retaliation in the record consists of generalized allegations of shunning, failure to follow the chain of command, failure to include Plaintiffs in and provide them information concerning meetings, and a poor performance review.[12] *See* Dkt. 45-1 at 52-58; Dkt. 45-2 at 28-33. These allegations do not, without more, create a jury question on the second and third elements of Plaintiffs' retaliation claim. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1216 (10th Cir. 2010) (holding that alleged snubs, including being given the "cold shoulder," failing to answer the plaintiff's questions, and generally avoiding her "though surely unpleasant and disturbing, are insufficient to support a claim of

---

[11] *See also Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1339–40 (10th Cir. 2025) (holding that the plaintiff's interview with university investigators was protected opposition because the plaintiff repeated her complaint and communicated to her employer her belief that it had engaged in wrongful discrimination).

[12] Plaintiffs fail to identify the specific conduct at issue in this case. Dkt. 48 at 25 (arguing that "shunning an employee *and other behavior* is prohibited retaliation if it causes material harm to the employee" (emphasis added)). There is evidence of other potential misconduct—including Ms. Lynn's poor performance review—in the record, but there is no allegation or evidence that the poor performance review affected Ms. Lynn's compensation or opportunities for advancement. Dkt. 45-2 at 31; Dkt. 48-15 (depicting overall score determined by averaging scores in various categories in March 2021). *Cf. Fox v. Nicholson*, 304 F. App'x 728, 733 (10th Cir. 2008) (holding that the plaintiff had "not establish[ed] a prima facie case on his claim that negative comments and lower scores on his performance review constituted retaliation because he was ultimately rated 'Fully Successful' on his performance review," and the facts did "not establish that [the plaintiff] suffered a materially adverse employment action").

No. 22-cv-337

retaliation under [Tenth Circuit] case law"); *Fox*, 304 F. App'x at 733 (concluding that lower scores in some categories of a review did not constitute retaliation when overall review was positive).[13]

Plaintiffs' single-paragraph discussion of the second and third elements necessary to prove their retaliation claim fails to establish conduct that rises to the level of an adverse employment action, and it likewise fails to establish that the conduct challenged by Plaintiffs was motivated by a desire to punish Plaintiffs for engaging in protected activity. *See Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003). Because there is no evidence to support these two essential elements, the Department is entitled to summary judgment in its favor with respect to Plaintiffs' retaliation claim.

C

Finally, the Court turns to Plaintiffs' hostile work environment and constructive discharge claims. The Department argues that it is entitled to summary judgment on both of these issues. *See* Dkt. 45 at 20-22, 28-29. Plaintiffs do not argue otherwise; indeed, the phrases "hostile work environment" and "constructive discharge" do not appear in Plaintiffs' brief. *See generally* Dkt. 48. The Court has reviewed the record and concludes that the evidence is insufficient to permit either of these claims to proceed. There is no evidence that would allow a jury to conclude that the Department was so "permeated with discriminatory intimidation, ridicule, and insult" that Plaintiffs' working conditions were altered and their working environment was rendered abusive, as is necessary to give rise to a hostile work environment claim. *Cf. Iweha v. State of Kansas*, 121 F.4th 1208, 1221 (10th Cir. 2024) (citation and quotation marks omitted). Nor is there any evidence to support a finding that the Department constructively discharged Ms. Hurt by making the

---

[13] *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994) (agreeing that summary judgment was appropriate where the plaintiff, despite receiving a review that was lower than previous evaluations, had "presented no evidence of adverse action relating to her evaluation").

conditions of her employment so intolerable that she had no choice but to leave. *Cf. Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1235 (10th Cir. 2022) (recognizing that a plaintiff carries a substantial burden on a constructive-discharge claim, which requires evidence of something more than actionable harassment). Accordingly, the Court grants summary judgment to the Department on Plaintiffs' hostile work environment and constructive discharge claims.

### III

Because the evidence of record could permit a jury to find that the Department's stated reasons for promoting Mr. Hickerson and Mr. Wilson are pretextual, the Court denies the Department's motion for summary judgment on Plaintiff's failure-to-promote claim. The Department's motion is granted in all other respects.

DATED this 2d day of June 2025.

_____
John D. Russell
*United States District Judge*